22-5018, United States v. Slinkard. Good morning again, Your Honors. My name is Kathleen Shen and I represent the appellate, Mr. Joshua Slinkard. Before permitting Mr. Slinkard to allocute, the District Court made crystal clear its conclusion that Mr. Slinkard would spend the rest of his life in prison. And I'm just going to recite it again, we've already heard it. It said, based on the information provided by the parties, I will not vary from the advisory guidelines level as the factors fail to separate this defendant from the minority of similarly situated defendants. And he continued, just to eliminate any possible doubt, which I think the first statement is unambiguous, but he said, there is no way in good conscience that I could ever allow this defendant to be among the public or near any child. And it was only after thus making it crystal clear that it had definitively decided to impose a sentence of life imprisonment that the District Court offered Mr. Slinkard the opportunity to speak, which he declined. And I think this is a clear violation of Landeros-Lopez, which holds that seemingly conclusive pronouncements of the sentence that are made before the defendant has been personally invited to speak result in a denial of the right to allocute unless the court makes clear that it will genuinely reconsider in light of what the defendant says. Of course, there's nothing in the record to indicate that the District Court is going to have to genuinely reconsider. This isn't anything tentative. And just to address a concern this court may have, I think under Landeros-Lopez, it's not enough that sentence has yet to be formally imposed. The question isn't just, did the District Court officially impose the sentence? The question is, is the defendant being told that he really has the opportunity to say whatever he wants to say in his own defense? And I think here it's clear that didn't happen. And so this was a plan error. It clearly violates Landeros-Lopez and affected Mr. Slinkard's substantial rights. Under Bustamante-Conchis, this court treats a denial of allocution as prejudicial if it was possible for the sentence to be shorter. And Mr. Slinkard's sentence could have been shorter. It was a mandatory minimum of 30 years. There was no plea agreement. And so that under Bustamante-Conchis, there's a reasonable probability that he would have gotten a different sentence. And that makes sense. Like the sentencing guidelines, allocution plays a central role in determining the sentence and evaluating the 3553 factors. And it's reasonable to expect that it has an impact on the sentence in the usual case. And finally, I think it's important in a case like this to talk about why the error seriously affects the fairness and integrity and public reputation of judicial proceedings. It's just a bedrock principle of our justice system that the punishment suit not merely the offense but the individual defendant. And by deciding to impose a sentence of life imprisonment, which is the second most severe sanction available, without hearing from the defendant, the district court calls that basic principle into question. There's no indication that its ruling was tentative. Mr. Slinkard construed it as final. And the district court didn't address anything that Mr. Slinkard said, of course, because he didn't say anything. And so under these circumstances, I think a member of the public could very well question whether Mr. Slinkard received the individualized consideration that our law requires people to receive at sentencing. And so for all these reasons, we ask that you vacate Mr. Slinkard's sentence and remand for resentencing. May it please the court, Thomas Duncombe for the United States. I'll start by I've got a question. Yes, your honor. In looking at the transcript, page 62, I would be very interested in hearing your argument that there is no way, quote, Now, under the rule, and this is done before the defendant is out and has the opportunity to out him. I'd like to hear you tell me why that language is not a defendant's statement that this man didn't get an opportunity to out him. And that's exactly the question I was going to ask. Well, and I certainly understand that. And so I'll give it my best shot here. The court here is denying the motion for variance. That's the first step. And so the government's position is, based on all the case law in this circuit and other circuits, there's no error in the court denying the motion for variance before the allocution. The second thing is the definitive or conclusive sounding nature of the language is not what determines whether there needs to be a remand under plain error review. Because in order for the error to be clear or obvious under this court's case law or with a confluence of other circuits, there needs to be a definitive announcement of a sentence. Now here, it only sounds more definitive than the Benitez-Gimenez case this court just heard because of the way the court describes it. There's no way in good conscience I could do that, which essentially means in layman's terms, I would feel guilty about it if I did that. Again, as the government argued in the Benitez-Gimenez case, there is no error, especially plain error, in definitively or making an announcement on any particular issue, even if that sounds conclusive as to that issue. Here, that issue was a downward variance. The issue comes, and this is what the court said in Landeros-Lopez and what the court said in Bustamante-Conscious and what the court said in the Thies case, the 2017 Thies or Thies case. The error was that the court definitively or, excuse me, in Thies there was no error, but whether there was an error depended on whether the court definitively announced the defendant's sentence before allowing the defendant to allocate. That sounds reasonable in the abstract, but not so much with this language. Can you imagine a defendant who heard that who would think that there's any chance that allocutions would be of use? I can't. Maybe an incredibly optimistic defendant. I think that it's two points I would make to that. The first is the right of allocation applies not without regard to variances or departures or what the guidelines are going to be or not going to be, even if a denial of a pre-sentencing motion results in what would be essentially a fixed sentence. The right under Rule 32 is to put forth any information that might mitigate the sentence. So just as the court in the Fifth Circuit said in Pitzinger, just because the ruling on the motion is final doesn't mean the sentence is final. And although the court doesn't need— That's all true in the abstract. I can see the defendant perhaps wanting to allocate in this circumstance to apologize to the victim's family or something like that, but not with any hope of reducing the sentence. And I would think that's the perspective we should look at this with, that perspective. Am I wrong about that? Shouldn't we look at the perspective of what it's saying to the defendant? We should. And the question then becomes, is it an objective standard? Is it a subjective standard? If there's something clear or obvious, like if it's clear or obvious that the court cannot make conclusive-sounding statements in denying a motion for variance, you'd expect to see language in this court's case law about what's the standard. Conclusive according to who? Is it the reasonable person? Is it the reasonable defendant? Is it objective reasonableness? Is the standard, if it sounded really conclusive? And the hypothetical that I would pose to this panel is, if the result would be different, if the court said, I really, really don't think that I could ever allow this defendant to be among the public or near any children, if the court's decision would be different under that set of facts than under what the court said here, then that's not a good standard to apply in practice. Because every court is going to interpret conclusive-sounding language differently. And every defendant is going to interpret conclusive-sounding language differently. It makes sense to do what this court has done so far, which is to draw a bright line on definitively announcing the sentence. And don't you think if you communicate clearly to the defendant that nothing the defendant says will reduce the sentence, isn't that a useful standard, an applicable standard? And perhaps we haven't stated that in the past because we haven't needed to. I was awfully surprised to see this language here. The language is unusually strong for granting a downward variance. And it only seems definitive under the unique facts of this case because the guidelines in this case is life. The defendant had a total offense level, I think, of 48 or 49. So the guidelines effectively set a fixed sentence. But the standard, again, that this court has adopted to this point is if there's been a definitive announcement of a sentence, and merely communicating an intention or communicating a strong intention does not violate Rule 32. That's what the courts have said in this circuit so far. And if the court wants to break new ground and say, well, previously we've drawn the line at whether the court has announced a sentence or not. Now we're going to draw a new line of, well, this language is just too conclusive because it's made a short life. It's a functional equivalent, I think. Functional equivalent. Yeah. That's language that's often used in courts saying it may not fit exactly, but it's a functional equivalent. Yes. Judge? I have another question in looking. Going back to the language in how the district court rules in this matter, I've heard it expressed by other colleagues that you can look to the sentence that the court actually imposed to determine the thinking of what the district court was doing. And you look at the comment that you made, as I read to you a while ago, and then you look at the sentence. I believe this got put away too long term. I mean, it appears to me that the district court meant exactly what it said. When you look at the sentence, am I missing something there? Because it looks to me like you drew the book in accordance to what he was initially saying. Isn't that correct? There's no way I'm going to turn you loose on the public? Well, there is one distinction that I would draw there, which is that the court wasn't actually directly addressing the defendant. The court was addressing the arguments made by defense counsel in her oral motion for variance at the hearing. And the court was providing a reaction to those statements. But more importantly— Excuse me, counsel. In a way, this individual was given absolutely the maximum of the guidelines that you could give. Is that correct? I'm looking at it, and it looks to me like that's what happened. It could have been misdreavus. Yes, the defendant got the maximum and the minimum under the guidelines because the guidelines were life. So that's one of the reasons why this case is factually distinct from Benitez-Jimenez. But if the court makes a ruling and breaks new ground, which in a plain error case the government would argue is not the time to break that new ground, but if the court wants to make the rule that you can deny the motions for variance as long as you don't sound conclusive while doing it, that's going to be a difficult standard to apply in practice. And it's going to be a standard that provides comfort in the initial sense, but it's the standard that this court currently has, which in Landeros-Lopez, in Guzman de Conchas, in Thies, the language that the court uses over and over again is whether the court definitively announced a sentence. And while there don't have to be any magic words used to communicate that, in Landeros-Lopez it was, it is and will be the judgment of this court that the defendant is committed to the custody and control of the Bureau of Prisons for 115 months. Similarly, in Lupke, which is the Seventh Circuit case that Mr. Slinkard cites, the court said it is adjudged that the defendant is committed to the custody of the BOP for 240 months. So while I do see that there is wisdom in potentially adopting a different rule... Well, let's just talk about the same rule and to take your phrase, how conclusively sounding it is. Let me ask you a hypothetical. Let's say I'm a district judge or a magistrate or a district judge and you're conducting a criminal trial, or I'm conducting a criminal trial, and you're the defense lawyer and you say, I want to, in a pretrial conference, I want to present a character witness, the mother of the defendant. And I say, I will not allow the character witness testimony of the defendant's mother based on a violation of the pretrial schedule or for whatever reason. I think it's unfairly prejudicial or not relevant. And then we can get to trial and I am ready to recognize the defendant for your case in chief. And you say, I want to proffer, I'm going to call the defendant's mother as a character witness. You really don't think it sounded conclusive when I said, I will not allow the defendant's mother to testify as a character witness. That's not conclusively sounding to you. You would think, oh, Judge Baccarat probably is going to allow it or he might allow it, even though I said, I will not do that. So two responses to your question, Judge Baccarat. First, being a trial lawyer for several years, I have seen district courts go back on what were supposedly very clear rulings earlier in the trial because after they've seen a few days of evidence, they've either forgotten the ruling. That's different. Rule 59E to say I've made a mistake or a lawyer saying I want you to revisit it. But your point answers the distinction that you're making, and that is to say, Judge, I want you to revisit it. But there is no revisit it in Jarvie, in Mendoza. There's none of that. There is what you had just said, a bright line test on whether it's conclusively sounding. Not whether or not it's conclusively sounding that the judge may change his or her mind. Well, and Judge, if I said that the bright line test the court currently has is whether it's conclusively sounding, that's not what the court's current test is. The court's current bright line test is did the court definitively announce the sentence? And the second thing that I would say in response to your hypothetical is in the context of a motion at sentencing, the court can be definitive and say, I will not vary. And that does not violate the right to allocution, because the right to allocution is not the right to address any particular motion or any particular guideline. It's a right to present information to mitigate the sentence. And so whether the court has made a ruling on any particular minutia, the rule that this court has thus far adopted is not about how conclusive the language sounded. Landeros-Lopez pointed out these conclusive pronouncements effectively communicated to the defendant that the decision was made. But those conclusive pronouncements in Landeros-Lopez were, here's what the sentence is going to be. It is the judgment of the court that I will not vary from the advisory guideline range, which, as you pointed out, is a fixed term of life. I will not give you anything other than, to Judge Baldock's point, life imprisonment. And my rejoinder to that is the Pitzinger case shows that that's wrong, because just because the motion is final doesn't mean the sentencing is final. The sentencing encompasses more than one motion or another. So I see my time has run out. The government respectfully requests that the court affirm on this record. Thank you, counsel. Thank you, Your Honor. I have a few points I want to address. First, this isn't breaking any new ground. I think this case is squarely covered by Landeros-Lopez. And just to go to what government counsel was talking about, trying to finally slice the distinction between a motion and a sentence, life imprisonment is a sentence. So in this case, when he says, you're never getting out again, that's a pronouncement of sentence regardless of the context in which it occurs. And I think one of the sort of broader themes of what the government is talking about is suggesting that defense counsel's argument is trying to put district courts in a box or trying to trap them. I don't think this is hard, and I don't think this is how most judges sentence. Although there's no script the judge has to follow, I'm not saying that they have to go in a specific order or trap them in any sort of, oh, you said the wrong thing, therefore you have to do this over again. What I'm saying is defendant has the right to allocute, and that is a meaningful opportunity to address the court and to say anything that he would like to say in his own defense. And as this court has recognized, when a district court says, I've already decided the sentence, what you have to say doesn't matter, that violates the right to allocute. And so just two observations. One, this really isn't how most judges sentence, and I don't think that we're trying to trap people or create some new rule that's going to trip courts up. I think this is an unusual sentencing procedure to so definitively announce what the sentence is going to be, and I just don't want this court to think that we're trying to create some big new rule that's going to change things for everyone. I do think that this case shows how the variance motion in particular can bleed into sentencing, and that's because, of course, a variance motion and the ultimate sentencing question are the same question. It's what do the 3553A factors allow? One thing that I do want to observe is that in this case, I think that the way the judge is doing the sentence, and frankly the Benitez-Jimenez sentence, really calls into question whether he understands that allocution is in fact part of the 3553A analysis, that you may be able to address a specific argument made in a motion for a variance  of how long someone's going to spend in prison, but you can't answer the whole question of how long someone's going to spend in prison before you hear from the defendant. And then finally, I think government counsel, when he talks about how conclusive things sound, is sort of suggesting that, I'm just trying to trap people with words, but the way that the district court speaks and what he communicates is really important. We can't police whether the district court is actually thinking the right things, whether they're really considering all the factors, whether they're really taking the allocution into account. All we can say is look at the words that he, all we can do is look at the record and ask, does this record show that a member of the public can say, okay, well maybe he is taking everything into account, maybe he is really listening to the defendant, maybe the defendant really does have the opportunity to speak, and that's just not present here. If the district court is clearly communicating that the sentence is decided before the defendant has any opportunity to speak, that matters and needs to be corrected by this court. For all these reasons, we ask that Mr. Slinkard's sentence be vacated. Thank you. Cases submitted. Counsel are excused.